## ARKANSAS REAL ESTATE CO., INC. *v.* CLAUD HEEB ET UX

5-5580        471 S.W. 2d 327

Opinion delivered October 4, 1971

*A. Joseph Nussbaum,* for appellant.

*Rose, Barron, Nash, Williamson, Carroll & Clay,* for appellees.

CONLEY BYRD, Justice. Appellant Arkansas Real Estate Co., Inc. appeals from judgments entered upon a $10,-000 note payable to Claud Heeb, dated April 23, 1965, and a $10,000 note payable to Claud Heeb and Elsie Heeb dated May 17, 1967. For reversal of the judgments appellant contends that the transactions with Mr. Heeb were actually sales agreements for Arkansas Warehouse Corporation stock that both parties knew had not been registered with the Arkansas Securities Commission. Based upon that premise, appellant then argues that the notes were unsupported by consideration and that the transaction is void under Arkansas Securities Act (Ark. Stat. Ann. §§ 67-1235—67-1262 [Repl. 1966]).

The instruments were produced and the signatures admitted. Under these circumstances, the Uniform Commercial Code, Ark. Stat. Ann. § 85-3-307 (Add. 1961), placed the burden upon appellant to prove its defenses.

Mr. Heeb had difficulty understanding the questions both on direct and cross-examination. A fair reading of his testimony would indicate that he first met appellant's president and vice president in his home. From that meeting he became interested in purchasing some Arkansas Warehouse Corporation stock. As a result of this interest he gave appellant a check for $10,000 and received the April 23rd note. The note recites that it is secured by Arkansas Warehouse Certificate No. 201 for 10,000 shares. The certificate No. 201 attached to the note certifies Arkansas Real Estate Co., Inc. is the owner of 10,000 shares. Later the same year Heeb delivered some Foundation Securities and Investors Preferred insurance stock to appellant and received another $10,000 note secured by Arkansas Warehouse Corporation stock. This latter note was renewed May 17, 1967, and recites that it is secured by a pledge of Certificate No. 186 of Arkansas Warehouse Corporation for 10,000 shares of stock. This certificate also certifies that Arkansas Real

Estate Co., Inc. is the owner thereof. On re-cross examination the following occurred:

"Q. We were talking about trading for some Arkansas Warehouse Corporation stock. How did that come bout?

A. There wasn't any warehouse stock delivered to me. This is all I got in my place there.

Q. This is Arkansas Warehouse stock here. This here. These certificates.

A. Well, I got here and he says this is the way we're doing this.

Q. We were told earlier you remember that the stock of Arkansas Warehouse Corporation had not been cleared by the Securities Department where they could sell their stock on the market?

A. He said what?

Q. You knew the stock of the Arkansas Warehouse Corporation had never been cleared by the Securities Department where it could be sold to the public at large?

A. Well, yes, I knew that.

Q. Was there some discussion at that time as to handling it as a trade of stock or as a loan?

A. No. There wasn't . . . he wasn't talking about couldn't be sold or anything. I found that out later.

At the March 4, 1970, hearing, Mr. Traylor, appellant's president, testified by stipulation by affidavit as follows:

"I was contacted by Mr. Hamilton Moses, a friend of Mr. Heeb's, to ascertain whether or not I would be interested in accepting certain Foundation Securities and Investors' Preferred stock which Mr. Heeb had, in trade for certain stock in the Arkansas Warehouse Corporation. The Foundations Securities and Investors' Preferred stock was of questionable value and there was no market for the stock at the time these two trades were made; there likewise was no market for the Arkansas Warehouse Corporation stock. Two separate trades were worked out between us where Mr. Heeb received a total of 20,-000 shares of Arkansas Warehouse Corporation stock in return for the stock he gave Arkansas Real Estate Co., Inc.

\*    \*    \*

The Securities Department of the State of Arkansas had not authorized Arkansas Warehouse Corporation at that time to sell its stock or debentures to the public and Mr. Heeb was aware of this at the time. For this reason, the trade of the stock was handled as a loan agreement rather than an outright sale, and the Arkansas Warehouse Corporation stock was transferred to Mr. Heeb as a pledge or security for loans, in fact, no money changed hands at all.

The notes given Mr. Heeb was given by me for the purpose, more or less, of my guaranteeing the value of the stock he was receiving."

At the June 22, 1970, hearing Mr. Traylor testified on direct that the two transactions were sales of Arkansas Warehouse Corporation stock and that as a result Mr. Heeb was made a director of Arkansas Warehouse Corporation. He explained that upon the advice of Mr. Moses, his lawyer, the notes were executed as a precaution against a violation of the Arkansas securities law. On cross-examination Mr. Traylor testified:

"Q. Okay, got that clear. And so your sole explanation of why this note was issued was an effort to avoid running afoul of any Arkansas securities laws?

A. In this particular case. We weren't selling stock at that time so we just did that as a precaution. We were advised to do it at that time.

Q. Tell me how you can sell stock and not be selling stock? Now, you either made a stock sale or you didn't make a stock sale.

A. Mr. Campbell, you can sell stock to one person in a corporation without breaking the securities laws. You know that as well as I do.

Q. Well, why didn't you do it then? Why did you disguise it in this manner?

A. I tried to tell you. We were advised by Mr. Moses to handle it the way we handled it. He drew up this note for that purpose."

Mr. John Yancey, appellant's vice president, testified that the transaction was a sale. On cross-examination he stated that he heard Mr. Moses explain to Mr. Traylor how to handle the transaction with Mr. Heeb.

Mr. L. K. Collier testified that as Mr. Heeb's attorney he had endeavored to collect the notes sued on. As a result he received from appellant's president the following letter:

"Dear Mr. Collier:

As per our conversation on the notes owed to Mr. Claud Heeb, we are getting the order signed and put on record for the land in Prairie County which we have for sale. Also we hope the opposition will not go to the Supreme Court so that this money derived from the sale of these lands will be available to us.

We are also working on liquidation of other holdings as rapidly as possible. We are interested in paying these notes as soon as we can without any problems.

I will call you the end of next week and I should have complete information on the above mentioned lands in Prairie County."

There is substantial evidence in the record from which the trial court could have found that Heeb had no knowledge that the Arkansas Warehouse Corporation stock was not registered with the Arkansas Securities Commissioner. Even if we should accept appellant's proposition that the transaction was in effect a sale still his assertion in his affidavit that he executed the notes to guarantee the value of the stocks supports a finding that the notes were executed for a valuable consideration. As pointed out by the trial court in its findings: "Mr. Traylor committed the corporation to the payment of said notes and the Corporation, acting through its president, treated such notes as being liabilities against the company . . ." The trial court's finding is certainly supported by the evidence.

Affirmed.